683 So.2d 899 (1996)
Eddie Lee HAYES, Individually and on Behalf of his Minor Children, Kevin Hayes and Kim Hayes, Robert Hayes, Geraldine Baker, Charles Earl Baker, Leandrew Baker, Felton Baker and Gregory Baker
v.
CITY OF BATON ROUGE/PARISH OF EAST BATON ROUGE, City of Baker, Baton Rouge City Police Department, Baker City Police Department, Dwayne Bovia, Baker Police Officer John Doe, Baton Rouge City Police Officer John Doe, Willie James Myers, Roderick Demond Fields, Donald Lee Augustus, et al.
No. 96 CA 0189.
Court of Appeal of Louisiana, First Circuit.
November 8, 1996.
*900 Kenneth L. Riche, Baton Rouge, for Plaintiffs-Appellees.
Mark Marinoff, Baton Rouge, for Defendants-Appellants.
Before LOTTINGER, C.J., and FOIL and FOGG, JJ.
FOGG, Judge.
This suit involves a survival action and a wrongful death action. The issues raised on appeal concern liability and quantum.
The incident giving rise to this suit occurred on May 25, 1992 shortly before 9:00 p.m. On that date, Baton Rouge City Police Officer Dwayne Bovia, operating a marked police unit, observed a 1988 Oldsmobile occupied by four black males being operated in a suspicious manner by Willie James Myers. At his request, Baton Rouge City Police Communications confirmed that the vehicle was stolen. Officer Bovia then requested that his dispatcher notify the Baker Police *901 Department as the vehicle was moving towards the Baker City limits. The Baker Police Department and the Baton Rouge Police Department do not share radio frequencies and it was necessary that the Baton Rouge City Police dispatcher contact the Baker City Police by telephone. The Baker City Police dispatcher contacted its own units independently thereafter.
Officer Mitzie Breeland, operating a marked Baker City Police unit, attempted to position her unit to assist Officer Bovia. At this time, the stolen Oldsmobile was traveling north on La 19 toward Truman Street. Officer Breeland was traveling southbound down La 19 and activated her bar lights. Traffic at the intersection of La 19 and Truman was stopped for the traffic signal. Officer Bovia had not yet turned on his bar lights or sirens and remained in traffic directly behind the stolen vehicle.
When Officer Bovia saw Officer Breeland approaching from the opposite direction, he pulled out from behind the stolen vehicle which was in the inside lane of La 19, a four lane, non-divided highway. Officer Bovia attempted to block the only avenue of escape for the stolen vehicle by pulling beside it. Officer Breeland also attempted to pull along the side of the stolen vehicle to assist in the apprehension of the suspects. At this point, Myers pulled out of his lane and into the opposing lane of travel colliding with Officer Bovia's police unit. Myers continued in the wrong lane of travel and around Officer Breeland's unit until he arrived at the signal controlling the intersection at 19th Street and Groom Road, at which point he turned right.
Meanwhile, Baton Rouge and Baker police officers had set up a roadblock on Groom Road; however, when Myers arrived at the roadblock he refused to stop and drove around the roadblock. Several officers continued to pursue the vehicle. Myers turned off Groom Road south onto Plank Road. Another police roadblock was set up on Plank Road which was also evaded by Myers in the stolen vehicle. Myers continued south on Plank Road until he reached Blount Road. He turned right onto Blount Road followed closely by Officer Bovia, Officer Dunaway of the Baker Police Department and other police units.
At this time, Baton Rouge City Police Supervisor, Sgt. Terry Wilson, made a call to set up a complete wedge-shaped roadblock on Blount Road. The testimony reflected that this was an extreme and highly unusual measure. At this third roadblock, Myers drove the stolen vehicle completely off the roadway, turned off the lights and traveled across a slight ditch and onto the sidewalk to avoid the roadblock. With various police units still in pursuit, Myers continued to travel at high rates of speed with his lights off. Having gone around three roadblocks, Myers then turned south on Elmgrove Garden Drive almost striking several pedestrians who were visiting by a parked vehicle along the roadway. Myers then turned east onto Rosenwald Road and then west onto Lark Street. At this point, immediately following Myers were Officer Bovia of the Baton Rouge City Police Department, Officer David Shultz of the Baton Rouge City Police K-9 Unit and Officer Dunaway of the Baker Police Department.
Upon reaching the end of Lark Street, which is a cul-de-sac, Myers left the roadway and proceeded between two residences in order to get to Badley Road which was directly behind the residences on Lark Street. The record revealed that there was a well-worn path that connected Lark Street with Badley Road and ran between two residences.
As Myers raced through this path with his lights off, he struck Joyce Hayes. The evidence reflects that Ms. Hayes was struck from the rear while trying to run away from the oncoming vehicle. Myers did not stop. In fact, the evidence reflects that at no time did Myers apply his breaks as he raced between the two residences. Ms. Hayes was thrown onto the hood of the car leaving an imprint in the dust there and was, then, thrown off the right side of the vehicle onto the tall grass.
Officer Bovia immediately followed Myers into the area between the residences. He observed someone lying on the ground in the tall grass, stopped his unit and began radioing *902 that a pedestrian was down and EMS was needed. While Officer Bovia radioed for help, Officer Shultz proceeded between the two residences also striking Ms. Hayes.
Officer Bovia then exited his unit, saw Officer Dunaway approaching and signaled him to pull over. Officer Dunaway did not see Ms. Hayes lying on the ground and thought the suspects had abandoned the stolen vehicle and fled on foot. He stopped his vehicle expecting to aid in their pursuit on foot. However, he then saw Officer Bovia standing over Ms. Hayes using his radio to call for help. Officer Bovia testified that, at that point, he heard Ms. Hayes groan.
Ms. Hayes was pronounced dead at the hospital. The cause of death was multifactorial. Her final diagnosis included multiple lacerations and abrasions of the upper and lower extremities, the head and the body; multiple fractures involving the cervical and thoracic spine, both clavicles and femoral bones, the right ankle and all of the ribs; tension pneumothorax with atelectasis of both lungs, focal pleural adhesions on the right side and hemorrhage in both pleural cavities; and lacerations of the right side of the liver and in the abdominal and pelvic cavities.
Joyce Hayes' husband, Eddie Hayes, individually and on behalf of his minor children, Kevin and Kim Hayes, along with Robert Baker, a major child of the deceased, filed this action for damages under LSA-C.C. art. 2315. Kevin and Kim Hayes also filed a claim under LSA-C.C. art. 2315.6. Named as defendants, in part, were City of Baton Rouge/Parish of East Baton Rouge (City/Parish), City of Baker, Baton Rouge Police Department, Baker City Police Department, Dwayne Bovia, Jimmy Randall Dunaway, David Schultz, Mitzie Breeland, and Willie James Myers.
The trial court rendered judgment in favor of Eddie Lee Hayes, Robert Baker, Kevin Hayes and Kim Hayes in the sum of $20,000 for the personal injuries sustained by Joyce Hayes, finding the City of Baton Rouge was forty percent at fault and Willie James Myers was sixty percent at fault. The court further rendered judgment for the wrongful death of Joyce Hayes, in pertinent part, against the City of Baton Rouge and in favor of: (1) Eddie Lee Hayes in the sum of $25,000, (2) Robert Baker in the sum of $125,000, (3) Kevin Hayes in the sum of $150,000 and (4) Kim Hayes in the sum of $150,000. All claims against the City of Baker, Randall Dunaway and Mitzie Breeland were dismissed with prejudice.
On appeal, the City/Parish contests the fault assessments. The plaintiffs answered the appeal seeking increases in the damage awards.
All persons have a duty to act reasonably under the circumstances. LSA-C.C. art. 2315. The determination of liability in a negligence case usually requires proof of five separate elements: (1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element). Fowler v. Roberts, 556 So.2d 1 (La.1989).
In this case, the officers were in pursuit of a vehicle that had been confirmed as stolen. For a long distance the occupants of that vehicle successfully avoided the police officers' vigorous efforts to stop them. In the final stretch of the chase, Myers turned off his headlights and sped through a residential neighborhood in the dark. He then turned onto private property in an effort to escape down a path which existed between two residences. This action frightened several people who were visiting on the porch of one on the residences, causing them to disperse frantically. Ms. Hayes was one of those persons. In an effort to escape, Ms. Hayes ran between the two residences. Myers followed her to the backyard of the residences, struck her with the front bumper of the car and continued to flee without stopping. Applying a duty-risk analysis, *903 these actions of Myers are clearly negligent and he is liable for the injuries suffered by Ms. Hayes.
However, there is no evidence that the police officers acted negligently during the extensive chase leading up to Myers running Ms. Hayes down with the stolen vehicle. The evidence reflects that the chase began with the officers attempting to stop a stolen vehicle occupied by four individuals. However, as the chase proceeded Myers actions, which included avoiding three roadblocks and endangering other motorists and several pedestrians, became more dangerous.
Officer Bovia testified that, in the final stage of the chase, he followed Myers down Elmgrove Garden Drive. Because that street is a cul-de-sac, he felt certain the suspect could not escape. As Myers reached the cul-de-sac, he veered to the left; Officer Bovia veered to the right. Myers left the roadway and proceeded down the path between the two residences. Myers struck Ms. Hayes; then, Officer Bovia entered the pathway. There is no evidence that the police officers breached their duty to act reasonably in trying to apprehend Myers. Therefore, we find the trial court was clearly wrong in assessing fault to the City/Parish. We find Myers was one hundred percent at fault for the injuries suffered by Ms. Hayes when she was struck by the stolen vehicle.
The City/Parish also contends the trial court erred in not finding Willie Myers at fault in the wrongful death of Ms. Hayes. The trial court found Myers should be relieved of liability for the death of Ms. Hayes because her death was caused solely by the negligence of Officer Shultz. In making this determination, the trial judge concluded that Ms. Hayes suffered two separate and distinct accidents. He relied on the factual determination that a significant interval of time passed between the time Myers struck Ms. Hayes and the time Officer Schultz struck her. He stated in his oral reasons for judgment, "But we know after the initial contact with the Oldsmobile, she laid there for a period of time for Officer Bovia to come up, get out and see her, radio. Then Shultz comes along. So I think this should be analyzed as two separate distinct instances, and I will do so."
The record does not support these factual findings of the trial court. Rather, Officer Bovia testified that he saw a person lying of the ground, stopped his vehicle, and attempted to radio for help. During this very brief period of time, Officer Shultz drove his vehicle past Officer Bovia's parked vehicle with no awareness that Ms. Hayes had been injured. He neither saw her on the ground nor realized that he had struck a person with his vehicle as he drove through the yards. Officer Bovia was unaware that Officer Shultz passed through the yards. Officer Shultz was followed immediately by a vehicle driven by Officer Dunaway. As Officer Dunaway approached Officer Bovia's parked vehicle, Officer Bovia got out of his car and signaled Officer Dunaway indicating that he should stop his vehicle to the east of Officer Bovia's vehicle, which he did. At this point, Officer Dunaway thought the suspects had bailed out of the stolen car in the yard and he was expecting to give chase; he, too, had not seen Ms. Hayes lying on the ground. After parking, Officer Dunaway looked at Officer Bovia and saw him standing over Ms. Hayes attempting to make radio contact with EMS. This testimony was uncontradicted and to find otherwise constituted manifest error. See Stobart v. State, Dept. of Transp. and Dev., 617 So.2d 880 (La.1993).
As Officer Shultz entered the path between the residences he saw the stolen vehicle on Badley Road. Therefore, it is clear that very little time passed between the time Myers struck Ms. Hayes and Officer Shultz struck Ms. Hayes. This time period was too short for Officer Bovia to get help for Ms. Hayes or for Ms. Hayes to help herself if she was able to do so.
Furthermore, the medical evidence discloses that the femurs in both of Ms. Hayes' legs were broken when she was struck by the stolen Oldsmobile. This injury alone would have greatly impaired, if not prevented, any attempt Ms. Hayes could have made to get out of harm's way.
Negligent conduct is a cause in fact of harm to another if it is a substantial factor in bringing about that harm. Dixie Drive It *904 Yourself System New Orleans Co. v. American Beverage Co., 137 So.2d 298, 242 La. 471 (La.1962). Stated another way, cause in fact is generally a "but for" inquiry; if the plaintiff probably would not have sustained the injuries but for the defendant's substandard conduct, such conduct is a cause in fact of the injury. Fowler v. Roberts, 556 So.2d 1 (La. 1989). When multiple causes are present, defendant's substandard conduct is a cause in fact when it is a factor generating plaintiff's harm. Rick v. State of Louisiana, Dept. of Transp. & Dev., 93-1776, 93-1784 (La. 1/14/94), 630 So.2d 1271.
But for Myers' negligence, Ms. Hayes would not have been lying in the tall grass in the dark back yard with two broken legs. We, therefore, conclude that the negligence of Myers was a substantial factor in bringing about Ms. Hayes' death and Officer Bovia's actions were not an intervening cause of Ms. Hayes' death.
The evidence reflects that Myers engaged in increasingly dangerous behavior as this high speed chase progressed. While driving a stolen vehicle, he avoided three roadblocks. The testimony of the police officers reflected that one roadblock is usually sufficient to stop the driver of a stolen vehicle. After driving off the road to avoid the third road block, Myers turned off the vehicle's lights and proceeded through the rest of the chase driving with no lights. He barely avoided striking pedestrians visiting near a truck on Elmgrove Garden Drive. He continued to run after striking Ms. Hayes. Additionally, although Officer Bovia saw Ms. Hayes lying on the ground, neither Officer Shultz nor Officer Dunaway saw her as they progressed between the two residences. The evidence reflects that it was very dark behind the residences, the grass was high and a barrel of garbage had been knocked over and garbage lay across the path of the vehicles. Before entering the path between the residences, Officer Bovia saw the people who were on foot around the houses flee. When Officers Shultz and Dunaway entered the scene there were no pedestrians in view.
Considering the extreme danger Myers presented to the community, the extensive measures which had already failed to stop Myers, the short period during which all four vehicles passed between the residences and topography of the area, we cannot say the City/Parish breached its duty to act reasonably under the circumstances. Rather, Myers' actions were the sole cause of Ms. Hayes' death. Therefore, we find Willie Myers to be one hundred percent at fault for the death of Ms. Hayes.
Plaintiffs answered the appeal contending the trial court erred in awarding insufficient damages for the personal injuries of Ms. Hayes, for the wrongful death of Ms. Hayes and to Kevin and Kim Hayes under LSA-C.C. art. 2315.6.
A trier of fact has much discretion in the assessment of damages in tort cases. LSA-C.C. art. 2324.1. In awarding general damages, this discretion has been described as great, and even vast. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
An appellate court's role in reviewing a damage award is not to decide what it considers to be an appropriate award, but to review the exercise of discretion by the trier of fact. It must first determine whether the award for the particular injuries and their effects, under the particular circumstances, on the particular injured person, is a clear abuse of the "much discretion" of the trier of fact. Youn v. Maritime Overseas Corp., 623 So.2d at 1260.
In reviewing general damage awards, only after a determination of an abuse of the trier of fact's vast discretion, is a resort to prior awards appropriate, and then for the purpose of determining the highest or lowest point which is reasonable within that discretion. Only when the award is beyond that which a reasonable trier of fact could assess for the effects of the particular injury, to the particular plaintiff, under the particular circumstances, should the reviewing court increase or reduce the award. Youn v. Maritime Overseas Corp., 623 So.2d at 1260-61.
We have thoroughly reviewed the testimony and evidence and cannot conclude *905 that the court abused its discretion in the damages awarded.
For the foregoing reasons, the trial court's assessment of fault for the survival action and the wrongful death action are reversed. Willie Myers is assessed with one hundred percent of the fault for both the survival action and the wrongful death action. In all other respects, the judgment of the trial court is affirmed. Costs are assessed against the appellees.
REVERSED IN PART AND AFFIRMED IN PART.